UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD GRIFFIN,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>DR. J. HODGES, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 21-cv-1474-MMA (LL)<br><br>**ORDER DISMISSING DEFENDANTS AS WAIVED AND FOR FAILURE TO STATE A CLAIM AND DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF FIRST AMENDED COMPLAINT UPON REMAINING DEFENDANT PURSUANT TO 28 U.S.C. § 1915(d) AND FED. R. CIV. P. 4(c)(3)** |

　　　　On August 11, 2021, Plaintiff Harold Griffin ("Plaintiff"), an inmate currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD") and proceeding *pro se*, filed a Complaint pursuant to 42 U.S.C. § 1983. *See* Doc. No. 1. Plaintiff did not prepay the $402 civil filing fee required by 28 U.S.C. § 1914(a) at the time of filing and instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* Doc. No. 2. The Court granted Plaintiff's Motion to Proceed IFP and sua sponte dismissed his Complaint for failing to state a claim pursuant to 28 U.S.C.

§ 1915(e)(2) & § 1915A.  *See* Doc. No. 5.  Plaintiff was granted forty-five (45) days leave to file an amended pleading in order to correct the deficiencies of pleading identified in the Court's Order.  *See id.* at 9–10.  Plaintiff was also cautioned that "Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived."  *Id.* at 10 (citing S.D. Cal. Civ. L.R. 15.1); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

On October 18, 2021, Plaintiff filed his First Amended Complaint ("FAC").  *See* Doc. No. 6.  In his FAC, Plaintiff no longer names Dr. J. Hodges, Dr. R. Barenchi, or Does 12–15 as Defendants in this matter.  Accordingly, the claims against these Defendants are deemed waived and the Court **DIRECTS** the Clerk of Court to terminate these Defendants from the docket.

### S<small>UA</small> S<small>PONTE</small> S<small>CREENING</small> P<small>URSUANT TO</small> 28 U.S.C. § 1915(<small>E</small>)(2) <small>AND</small> § 1915A(<small>B</small>)

As the Court previously informed Plaintiff, because he is a prisoner and is proceeding IFP, his FAC requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).  Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

A.  **Factual Allegations**

On May 5, 2019, Plaintiff "began seeking medical treatment for a developing bunion on his left great toe."  FAC at 4.  Plaintiff was examined by Defendant "LVN Doe 1" on

May 8, 2019. *Id.* While she "expressed concerns about infection," she told Plaintiff to "wait longer to see if his pain and exposed bunion would persist." *Id.* One week later, Plaintiff returned to the clinic where he was again examined by Defendant LVN Doe 1 where she "expressed dismay about how fast the bunion developed" but "did absolutely nothing to relieve the pain or clean Plaintiff's toe." *Id.* However, Defendant LVN Doe 1 did "schedule an appointment with the doctor" for that same day. *Id.* This appointment was cancelled and when Plaintiff "refused to leave the medical clinic." *Id.* Defendants LVN Doe 1 and LVN Doe 2 told Plaintiff that Defendant Dr. Shakiba "was in a meeting." *Id.* Plaintiff "requested something for pain and a wrap to reduce the exposure to further infection" but they told Plaintiff he "would be rescheduled." *Id.* at 4–5.

Plaintiff was rescheduled to see Dr. Shakiba a week later on May 23, 2019. *See id.* at 5. Dr. Shakiba "examined Plaintiff's left great toe and acknowledged the swelling, discoloration, and possible pain." *Id.* Dr. Shakiba "advised Plaintiff that he would submit a referral to a foot doctor for further information." *Id.* However, Dr. Shakiba refused to provide Plaintiff with "pain medication, a mobility device" or a "foot or toe wrap to relieve the pain and discomfort." *Id.*

On June 3, 2019, Plaintiff "called for a 'man down' which activates a medical emergency." *Id.* Plaintiff was transported to the "Triage Treatment Area (TTA)" for "examination and evaluation." (*Id.*) While there, Plaintiff received "a foot soak, bandages, and Tylenol 3 for pain." *Id.* Plaintiff was also scheduled to see Dr. Shakiba again on June 17, 2019. *See id.*

Prior to this examination on June 17, 2019, Plaintiff was "examined by LVN Doe 1 and LVN Doe 2" who "removed the Plaintiff's dirty, filthy bandages" and "replaced the same bandages." *Id.* at 5–6. Plaintiff waited two hours to see Dr. Shakiba but his appointment was ultimately rescheduled. *See id.* at 6.

On June 25, 2019, Plaintiff "approached Defendant O. Calderon and complained to her of not getting adequate treatment for a swollen, painful, and totally discolored great toe." *Id.* at 6. Defendant Calderon "took the time to listen to the Plaintiff implore for

medical treatment and relief" and "instructed the Plaintiff to follow procedures and be patient." *Id.*

On July 3, 2019, Plaintiff "sat in front of the medical clinic seeking … help from his chronic pain." *Id.* Plaintiff spoke with Defendant LVN Doe 3 and "expressed his frustration with doing all that was asked of him, and still not being treated for what had now become a blister." *Id.* Plaintiff removed the "soiled bandage" per Defendant LVN Doe 3's instructions. *Id.* at 6–7. Defendant LVN Doe 3 left the clinic and later came back to inform Plaintiff that the doctor "would not see Plaintiff" but she "assured Plaintiff that she would report this to her supervisor Mrs. Calderon." *Id.* at 7.

Plaintiff was examined by Defendant Dr. Saha on July 15, 2019. *See id.* Dr. Saha explained to the Plaintiff that he "would need surgery and a regime of antibiotics in order to receive any kind of relief." *Id.* However, Dr. Saha would not provide Plaintiff with pain medication and told Plaintiff that he was "just covering today for Dr. Shakiba." *Id.* at 7.

On August 29, 2019, Plaintiff was "transported offsite from RJD to Tri-City Medical Center to be admitted to undergo bunion surgery." *Id.* The surgeon was Defendant Dr. Amory. *See id.* Plaintiff returned to RJD the same day but he was "not given any pain medication or any ambulation devices to help with his mobility." *See id.* at 7–8. When Plaintiff arrived at RJD, he had an "approximate half inch pin protruding outward from his right great toe." *Id.* at 8. From August 29, 2019, to September 17, 2019, Plaintiff purportedly "did not receive any medical treatment or follow up." *Id.* Plaintiff "spoke to Dr. Shakiba about follow up care" but he was "told that Tri-City did not forward any instructions for follow-up care." *Id.*

When Plaintiff asked Defendant Calderon on September 21, 2019, why he had not received any follow up care, she "explained to the Plaintiff that Dr. Amory performed the procedure and did not fax or send any follow-up instructions." *Id.* Plaintiff also spoke to Defendant Unson "imploring for relief and help." *Id.* Defendant Unson "went inside" the clinic and returned with a form for Plaintiff to fill out to request medical care. *Id.* Plaintiff "filled out the form and dropped it into the sick call box." *Id.*

On September 28, 2019, Plaintiff was "called to TTA." *Id.* Plaintiff "requested clean dressings and wraps, in addition to crutches or any mobility device that would help the Plaintiff ambulate." *Id.* Plaintiff was told "there was not anything the medical staff could do without follow-up instructions from Tri-City." *Id.* at 9.

On October 4, 2019, another inmate "made a sudden move which propelled him into the Plaintiff" which caused the "longitudinal pin to go deeper in the Plaintiff's toe." *Id.* Plaintiff "went immediately to the clinic and was denied medical treatment." *Id.* A week later, on October 11, 2019, Plaintiff was "transported back to Tri-City Medical Center" for a post "bunionectomy of the left foot." *Id.* Plaintiff was examined by Dr. Amory who "noted that the pin had been pushed inside the Plaintiff's foot and the foot had healed, enclosing the pin." *Id.* Dr. Amory also noted that the "stitches should have been removed weeks ago." *Id.* Dr. Amory allegedly "admitted partial blame for the Plaintiff's pain and suffering" but he "also informed the Plaintiff that the medical staff at RJD could have made a more concerted attempt to ascertain follow-up after-care instruction and that could have at least reduced the risk for infection and prevented the need for additional surgery." *Id.*

Plaintiff was again admitted to Tri-City Medical Center on October 23, 2019, for the "additional surgery to remove the pin." *Id.* Since this surgery, Plaintiff has been issued a "permanent walker to assist his ambulation." *Id.* at 10.

Plaintiff seeks unspecified compensatory and punitive damages. *See id.* at 11.

**B.   Analysis**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).

The Eighth Amendment requires that inmates have "ready access to adequate medical care[.]" *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982). To state a claim for violation of his Eighth Amendment right to medical care, Plaintiff must allege that

Defendants acted with "deliberate indifference" to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

"Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation." *Norvell v. Roberts*, No. 20-cv-0512 JLS (NLS), 2020 WL 4464454, at *4 (S.D. Cal. Aug. 4, 2020) (citing *Estelle*, 429 U.S. at 105–07. Moreover, "isolated occurrences of neglect" do not constitute deliberate indifference. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Plaintiff "must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (quoting *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014 (en banc)).

Plaintiff's allegations against LVN Doe 1, LVN Doe 2, LVN Doe 3, Dr. Saha, O. Calderon, M. Unson, and Dr. Amory do not rise to the level of deliberate indifference to a serious medical need on the part of any of these Defendants. *See Wilhelm v. Rotman*, 680

F.3d 1113, 1122 (9th Cir. 2012) (deliberate indifference requires, among other things, showing "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference . . . ." (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Regarding LVN Doe Defendants, Plaintiff alleges that they provided him treatment and ensured that he would be seen by a doctor for more specific treatment. FAC at 4–7. Plaintiff alleges that he was seen by Dr. Saha on only one occasion and was prescribed antibiotics by Dr. Saha. *Id*. at 7. As for Defendants Calderon and Unson, they instructed Plaintiff to follow the proper procedures and gave him the proper forms to make a request for medical treatment. *Id.* at 6–8. Moreover, Plaintiff acknowledges that Defendant Calderon "took the time to listen to Plaintiff implore for medical treatment and relief" before giving him the proper instructions to obtain this relief. *See id*. at 6. Plaintiff also seeks to hold Defendant Amory liable because RJD officials purportedly did not receive instructions for "follow up care" following his surgery. *Id.* at 9. However, there are no allegations that Defendant Amory was aware that there had been no post-surgery treatment instructions sent to RJD. In fact, Plaintiff alleges that Defendant Amory told him that "medical staff at RJD could have made a more concerted attempt to ascertain follow-up after-care instructions and that could have at least reduced the risk for infection and prevented the need for additional surgery." *Id.*

Accordingly, Plaintiff's claims against Defendants LVN Doe 1, LVN Doe 2, LVN Doe 3, Dr. Saha, O. Calderon, M. Unson, and Dr. Amory are dismissed sua sponte for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

However, the Court finds that Plaintiff's FAC contains plausible Eighth Amendment inadequate medical care claims as to Defendant Shakiba sufficient to survive the "low threshold" set to withstand the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Farmer*, 511 U.S. at 837 (finding that "failure to protect" claims under the Eighth Amendment require a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate health

or safety."); *Jett*, 439 F.3d at 1096 (stating that to maintain an Eighth Amendment claim based on medical care in prison, a prisoner must show deliberate indifference to his serious medical needs) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (quotation marks omitted).

Therefore, the Court **DIRECTS** the U.S. Marshal to effect service of summons of Defendant Shakiba of Plaintiff's FAC on his behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal ... if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

## Conclusion

Based upon the foregoing, the Court:

1. **DISMISSES** all claims against Defendants Hodges, Barenchi, and Does 12–15 as waived and **DIRECTS** the Clerk of Court to terminate these Defendants from the docket.

2. **DISMISSES** all claims against Defendants Amory, Saha, Calderon, Unson, and Does Licensed Vocational Nurses for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) and **DIRECTS** the Clerk of Court to terminate these Defendants from the docket.

3. **DIRECTS** the Clerk of Court to issue a summons as to Defendant Shakiba and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for Defendant. In addition, the Clerk will provide Plaintiff with a certified copy of the September 8, 2021 Order granting IFP status, certified copies of his FAC, and the summons so that he may serve the Defendant. Upon receipt of this "IFP Package," Plaintiff must complete the USM Form 285s as completely and accurately as possible, *include an address where each named Defendant may be found and/or subject to service* pursuant to S.D. Cal. Civ. L.R. 4.1c., and return them to the U.S. Marshal according to the instructions the Clerk provides in the letter accompanying his IFP Package.

4. **ORDERS** the U.S. Marshal to serve a copy of the FAC and summons upon Defendant **Shakiba** as directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

5. **ORDERS** Defendant, once he has been served, to reply to Plaintiff's FAC within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (providing that while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility  under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," the Defendants are required to respond).

6. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendant, or if appearance has been entered by counsel, upon Defendant's counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b).  Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been served on Defendant or his counsel, and the date of that service.  *See* S.D. Cal. Civ. L.R. 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon the Defendant, or his counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated:  November 17, 2021

HON. MICHAEL M. ANELLO
United States District Judge